**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

KELLI L. SAGER (State Bar No. 120162)
 kellisager@dwt.com
BRUCE ISAACS (State Bar No. 100926)
 bruceisaacs@dwt.com
JASON HARROW (State Bar No. 308560)
 jasonharrow@dwt.com

Attorneys for Defendant
KELLI MARSHALL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA WARD KELLY, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> UNIVERSITY PRESS OF MISSISSIPPI a Mississippi Corporation, KELLI MARSHALL, an individual, and DOES 1 through 10, <br><br> Defendants. | Case No. **16-cv-2960-PA-GJS** <br> Assigned to the Hon. Percy Anderson <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT AGAINST DEFENDANT KELLI MARSHALL; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES (F.R.C.P. 12(B)(6))** <br><br> Hearing Date:  August 1, 2016 <br> Time:              1:30 p.m. <br> Courtroom:     15 <br> Judge:           Hon. Percy Anderson <br><br> (Declaration of Kelli L. Sager and Request For Judicial Notice With Declaration of Jason Harrow And Exhibits 1-3 Concurrently Filed; [Proposed] Order Concurrently Lodged) |

NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

PLEASE TAKE NOTICE that on August 1, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Percy Anderson of the United States District Court for the Central District of California, in Courtroom 15 of the Spring Street Courthouse, located at 312 N. Spring Street, Los Angeles, California 90012, Defendant Kelli Marshall ("Dr. Marshall") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiff Patricia Ward Kelly's Complaint and its First Claim For Relief for copyright infringement,[1] with prejudice.

As set forth in more detail in the attached Memorandum Of Points And Authorities, the Complaint against Dr. Marshall should be dismissed for each of the following independent reasons:

1. Plaintiff's lawsuit should be dismissed because her First Claim For Relief for copyright infringement, which is the only claim asserted, is not ripe. Plaintiff's copyright claim purports to arise solely from an anticipated book that Dr. Marshall is preparing for <u>future</u> publication, referred to in the Complaint as "Gene Kelly: Interviews" ("Future Book"). There is no allegation that Dr. Marshall has published anything that infringes copyrights owned by Plaintiff, nor are any specific facts alleged that support a claim of infringement of any particular copyrighted work. Because there is no cognizable case or controversy over which this Court has subject matter jurisdiction, the lawsuit should be dismissed. <u>See</u> Section II, <u>infra</u>.

2. Plaintiff's lawsuit should be dismissed for the independent reason that it seeks to impose an unconstitutional prior restraint, in violation of Dr. Marshall's First Amendment rights. The limited availability of injunctive relief as a possible remedy for <u>proven</u> copyright violations[2] has no application to cases like this one, where the purported "infringement" has not happened, and is asserted to arise from a possible

---

[1] The Complaint only alleges a single claim for copyright infringement.

[2] 17 U.S.C. § 502(a).

future work of authorship.  Under these circumstances, any copyright interests are vastly outweighed by well-established First Amendment protections against prior restraints on speech.  Because Plaintiff cannot justify such a presumptively unconstitutional restriction on speech – nor can she demonstrate that she has suffered any cognizable damage, since the purported "infringement" has not happened – the lawsuit should be dismissed.  See Section III, infra.

3.      Plaintiff's First Claim For Relief for copyright infringement fails for the additional reason that she has not met her burden of alleging facts sufficient to establish exclusive ownership of the works identified in Exhibit A to the Complaint ("the Interviews").[3]  The theory alleged in the Complaint – that actor Gene Kelly ("Kelly") "owned" the copyright to every word he uttered to reporters and other interlocutors over the course of his life – fails as a matter of law for the following reasons:

a.      Oral utterances are not copyrightable; consequently, oral responses to interview questions are not copyrighted works owned by the speaker.  Where a third party "fixes" oral utterances into an expressive work, as in an interview published in a magazine or in a television program, the publisher is the author and copyright owner of the published work.  Plaintiff does not and cannot plead facts identifying any Interviews for which Gene Kelly "fixed" his oral interview responses in a tangible medium.  See Section IV(A)(1)-(2), infra .

_____

[3] Although Plaintiff purports to claim copyright ownership in every word "spoken and written" by Gene Kelly in any interview during his lifetime (see Cmplt. ¶ 10), there is no allegation in the Complaint that all of these "works" have been registered with the U.S. Copyright Office, which is a prerequisite for a copyright lawsuit.  17 U.S.C. § 411(a).  Exhibit A identifies thirty-three (33) "Interviews" for which copyright registration applications were filed **in April 2016**.  Cmplt., Ex. A. These are the only "works" at issue here.

b.      Plaintiff has not alleged facts sufficient to establish that the contents of the Interviews consist of copyrightable expression.  As a matter of law, "facts" and "ideas" are not copyrightable; because Plaintiff has not sufficiently alleged that the content of the Interviews consists solely of protected expression, rather than unprotected "facts" and "ideas," her copyright claim fails.  See Section IV(A)(3), infra .

c.      Plaintiff has not alleged facts sufficient to establish that seven of the Interviews included in Exhibit A, which pre-date the 1976 Copyright Act, are subject to a valid copyright and are not already in the public domain.  The Complaint alleges only that Plaintiff filed applications to register these "works" in **April 2016**, which cannot serve to resurrect copyrights that already have expired.  See Section IV(A)(4), infra.

4.      In the alternative, assuming that Gene Kelly ever owned a copyright interest in his interview answers, it was not an exclusive copyright interest; thus, neither he nor his heirs have the right to monopoly control of "words" he spoke during interviews with third party publishers.

a.      At most, interviewees may be considered "joint authors" with interviewers who are responsible for selecting topics and preparing questions, making editorial choices about what to include in the publication, and fixing the work into a tangible medium of expression.  Assuming, for sake of argument, that Gene Kelly had a "joint" copyright interest in the Interviews, neither he nor his heirs have the right to block other "joint authors" (like the publishers) from distributing the Interviews, or preclude them from granting non-exclusive licenses to republish the Interviews in which they own rights.  See Section V(A).[4]

_____

[4] During the parties' Rule 7.3 conference, Plaintiff's counsel claimed that Plaintiff's rights arise under Section 201(c) of the Copyright Act, which concerns the rights of individual contributors to collective works.  That Section does not apply

     b.     Plaintiff effectively concedes that the original publishers of the Interviews had an implied license to publish them (Cmplt. ¶ 9); she has not and cannot allege facts sufficient to establish that the original publishers would be exceeding the scope of their rights by permitting Dr. Marshall to republish the Interviews in a Future Book.  <u>See</u> Section V(B), <u>infra</u>.

     c.     Because the publishers have copyright interests that are implicated by this lawsuit, they are necessary and indispensable parties; Plaintiff's failure to name them in this lawsuit requires that the lawsuit be dismissed.  <u>See</u> Section V(D), <u>infra</u>.

For each of these reasons, this Court should grant Defendant Kelli Marshall's Motion, and dismiss Plaintiff's Complaint against her with prejudice.

This Motion is based on this Notice; on the attached Memorandum Of Points And Authorities; on the concurrently-filed Declaration Of Kelli L. Sager; on the concurrently-filed Request For Judicial Notice With Declaration of Jason Harrow And Exhibits 1-3; on any other matters of which this Court may take judicial notice; on all pleadings, files and records in this action; and on such argument as may be received by this Court at the hearing on this Motion.

This Motion is made following the conference of counsel that occurred on June 23, 2016, pursuant to Local Rule 7-3.  <u>See</u> Sager Decl., ¶ 2.

DATED: June 30, 2016          D<small>AVIS</small>  W<small>RIGHT</small>  T<small>REMAINE</small>  LLP


     By: _____/s/ Kelli Sager_____
             Kelli L. Sager
            Attorneys for Defendant
            KELLI MARSHALL

---

here, because Gene Kelly did not make a separate and independent contribution to the published interviews.  <u>See</u> Section V(C), <u>infra</u>.

# TABLE OF CONTENTS

Page

I.  SUMMARY OF ARGUMENT .................................................................... 1

II.  PLAINTIFF'S PREEMPTIVE COPYRIGHT SUIT IS PREMATURE. ....... 3

III.  PLAINTIFF'S BROAD COPYRIGHT CLAIM IS INCONSISTENT WITH FIRST AMENDMENT RIGHTS OF EXPRESSION. ....................... 5

IV.  PLAINTIFF DOES NOT OWN A COPYRIGHT INTEREST IN GENE KELLY'S RESPONSES TO INTERVIEW QUESTIONS. ......................... 9

    A.  Plaintiff Has Not Met Her Burden Of Pleading Copyright Ownership............................................................................ 10

        1.  Gene Kelly's Oral Interview Responses Were Unprotectable. ........................................................... 10

        2.  Gene Kelly Was Not The "Author" Of The Interviews. .................................................................. 12

        3.  The Interviews Consist Of Uncopyrightable Facts And Ideas.................................................................... 15

        4.  Plaintiff Has Not Alleged A Valid Copyright In Pre-1978 Works. ........................................................ 16

V.  PLAINTIFF CANNOT ESTABLISH OWNERSHIP OF AN EXCLUSIVE COPYRIGHT INTEREST IN THE INTERVIEWS............. 19

    A.  Joint Authors Cannot Unilaterally Prohibit Licensing Of Joint Works............................................................................... 19

    B.  The Publishers Of The Interviews Indisputably Have An Implied License To Publish Or Re-Publish Their Works................................ 21

    C.  Section 201(c) Does Not Give Plaintiff An Exclusive Copyright Interest In Any Of The Interviews. ................................... 22

    D.  Plaintiff's Failure To Join Necessary Parties Requires Dismissal..... 24

VI.  CONCLUSION .......................................................................... 25

MEMORANDUM OF LAW IN SUPPORT OF MTD
DWT 29963578v1 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Aalmuhammed v. Lee,
   202 F.3d 1227 (9th Cir. 2000) ........................................................ 13, 20

Addington v. U.S. Airline Pilots Ass'n,
   606 F.3d 1174 (9th Cir. 2010) ...................................................................... 5

Bollea v. Gawker Media, LLC,
   913 F. Supp. 2d 1325 (M. D. Fla. 2012) .................................................... 8

Bova v. City of Medford,
   564 F.3d 1093 (9th Cir. 2009) ...................................................................... 4

Brod v. General Publ'g Group, Inc.,
   32 F. App'x 231 (9th Cir. 2002) ................................................................ 20

Brown v. Latin Am. Music Co.,
   498 F.3d 18 (1st Cir. 2007) .................................................................. 18, 19

Burrow-Giles Lithographic Co. v. Sarony,
   111 U.S. 53 (1884) ...................................................................................... 13

CBS, Inc. v. Davis,
   510 U.S. 1315 (1994) .................................................................................... 9

Choyce v. SF Bay Area Indep. Media Ctr.,
   No. 13-cv-01842, 2014 WL 5597274 (N.D. Cal. Nov. 3, 2014) ............ 17

Community For Creative Non-Violence v. Reid,
   490 U.S. 730 (1989) .................................................................................... 13

Dastar Corp. v. Twentieth Century Fox Film Corp.,
   539 U.S. 23 (2003) ...................................................................................... 18

eBay, Inc. v. MercExchange, LLC,
   547 U.S. 388 (2007) ...................................................................................... 9

Effects Associates, Inc. v. Cohen,
   908 F.2d 555 (9th Cir. 1990) .................................................................. 21, 22

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Eldred v. Ashcroft,
 537 U.S. 186.................................................................................6

Estate of Hemingway v. Random House,
 49 Misc. 2d 726 (N.Y. Sup. Ct. 1966) ..............................................19

Estate of Hemingway v. Random House, Inc.,
 23 N.Y.2d 341 (1968) .....................................................................11

Fallaci v. New Gazette Literary Corp.,
 568 F. Supp. 1172 (S.D.N.Y. 1983) .................................................13

Falwell v. Penthouse Int'l, Ltd.,
 521 F. Supp. 1204 (W.D. Va. 1981) .................................................11

Feist Publs., Inc. v. Rural Tel. Serv. Co.,
 499 U.S. 340 (1991) .....................................................................4, 10

First Financial Mktg. Servs. Group, Inc. v. Field Promotions, Inc.,
 286 F.Supp. 295 (S.D.N.Y. 1968)...........................................2, 23, 25

Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,
 654 F.3d 958 (9th Cir. 2011) ........................................................9, 17

Foundation for Lost Boys And Girls of Sudan, Inc. v. Alcon Entm't,
 No. 15-cv-509 (N.D. Ga. March 22, 2016), ECF No. 32 .....................20

Four Navy Seals & Jane Doe v. AP,
 413 F. Supp. 2d 1136 (S.D. Cal. 2005)...............................................7

Gaines v. Fusari,
 No. 11-cv-4433, 2012 WL 3018293 (D.N.J. July 24, 2012) ...............24

Garcia v. Google, Inc.
 786 F.3d 733 (9th Cir. 2015) ....................................................*passim*

Golan v. Holder,
 132 S. Ct. 873 (2012)......................................................................7

Harper & Row, Publrs. v. Nation Enters.,
 471 U.S. 539 (1985).....................................................................7, 10

Harris v. Miller,
 1941 U.S. Dist. LEXIS 3949 (S.D.N.Y. 1941)....................................11

Inhale, Inc. v. Starbuzz Tobacco, Inc.,
   755 F.3d 1038 (9th Cir. 2014) ............................................................................. 15

Jackson v. Bank of Haw.,
   902 F.2d 1385 (9th Cir. 1990) ............................................................................. 25

Jim Marshall Photography, LLC v. John Varvatos of California,
   No. 11-cv-6702, 2013 WL 3339048 (N.D. Cal. June 28, 2013) ..................... 16, 17

Key W. Hand Print Fabrics, Inc. v. Serbin, Inc.,
   269 F. Supp. 605 (S.D. Fla. 1966) ....................................................................... 24

Maxtone-Graham v. Burtchaell,
   631 F. Supp. 1432 (S.D.N.Y. 1986) ..................................................................... 12

Morris v. Bus. Concepts, Inc.,
   283 F.3d 502 (2d Cir. 2002) ................................................................................. 15

Narell v. Freeman,
   872 F.2d 907 (9th Cir. 1989) ............................................................................... 15

National Basketball Ass'n v. Motorola, Inc.,
   105 F.3d 841 (2d Cir. 1997) ................................................................................. 12

Nebraska Press Ass'n v. Stuart,
   427 U.S. 539 (1976) ............................................................................................... 8

New York Times Co. v. Tasini,
   533 U.S. 483 (2001) ......................................................................................... 17, 23

Novak v. Warner Bros Pictures, LLC,
   387 F. App'x 747 (9th Cir. 2010) ........................................................................ 15

Oddo v. Ries,
   743 F.2d 630 (9th Cir. 1984) ......................................................................... 21, 22

Online Policy Group v. Diebold, Inc.,
   337 F. Supp. 2d 1195 (N.D. Cal. 2004) ................................................................ 7

Pacific & Southern Co. v. Duncan,
   792 F.2d 1013 (11th Cir. 1986) ........................................................................... 13

Patterson v. Colorado ex rel. Attorney General,
   205 U.S. 454 (1907) ............................................................................................... 8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PocketMedicine.com, Inc. v. John Wiley & Sons, Inc.,
   No. 04-cv-8369, 2006 WL 785283 (S.D.N.Y. Mar. 23, 2006) ..............................5

Prod. Contractors, Inc. v. WGN Cont'l Broad. Co.,
   622 F. Supp. 1500 (N.D. Ill. 1985) .......................................................12

Quinto v. Legal Times of Washington, Inc.,
   506 F. Supp. 554 (D.D.C. 1981) .............................................14, 16, 20

Religious Techn. Ctr. v. Lerma,
   908 F. Supp. 1362 (E.D.Va. 1995) ..............................................................7

Rokeach v. Avco Embassy Pictures Corp.,
   No. 75-cv-49, 1978 WL 23519 (S.D.N.Y. Jan. 17, 1978).....................................16

Rosemont Enterp. v. Random House, Inc.,
   366 F.2d 303 (2d Cir. 1966).........................................................................7

Silverman v. CBS Inc.,
   632 F. Supp. 1344 (S.D.N.Y. 1986) ...........................................................5

Sony Corp. of Am. v. Universal City Studios, Inc.,
   464 U.S. 417 (1984)....................................................................................7

South Pacific Transp. Co. v. City of Los Angeles,
   922 F.2d 498 (9th Cir. 1990) .......................................................................4

Stafford Trading, Inc. v. Lovely,
   2007 WL 1512417 (N.D. Ill. May 21, 2007).......................................................24

Suid v. Newsweek Magazine,
   503 F. Supp. 146 (D.D.C. 1980) ..............................................................12

Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,
   756 F.3d 73 (2d Cir. 2014).......................................................7, 12, 15

Taggart v. WMAQ Channel 5 Chicago,
   No. 00-cv-4205, 2000 WL 1923322 (S.D. Ill. Oct. 30, 2000).............10, 11, 13, 16

Twin Books Corp. v. Walt Disney Co.,
   83 F.3d 1162 (9th Cir. 1996) .................................................................17, 18

Urantia Found. V. Maaherra,
   114 F.3d 955 (9th Cir. 1997) .................................................................14, 18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Wages v. I.R.S.,
   915 F.2d 1230 (9th Cir. 1990) ............................................................. 25

Western Oil & Gas Ass'n v. Sonoma Cty.,
   905 F.2d 1287 (9th Cir. 1990) ............................................................... 4

Williams v. ARC Music Corp.,
   121 F.3d 720 (9th Cir. 1997) (unpublished) ........................................ 21

**Statutes**

17 U.S.C.
   § 101 ............................................................................ 13, 19, 23, 24
   § 102(a) ...................................................................................... 10, 11
   § 201(a) .............................................................................................. 13
   § 201(c) ............................................................................ 22, 23, 24
   § 301 .................................................................................................. 24
   § 304(a) (1983) ................................................................................ 18
   § 410(c) ............................................................................................... 9
   § 505 .................................................................................................. 25

**Rules**

F.R.C.P. 19 ................................................................................... 3, 24

**Other Authorities**

Mark A. Lemley & Eugene Volokh, "Freedom of Speech and
   Injunctions in Intellectual Property Cases," 48 Duke L.J. 147, 169
   (1998) ..................................................................................................... 6

Paul Goldstein, Goldstein on Copyright § 4.2.1.3 (3d Ed. 2016) ............................. 19

William Patry, Patry on Copyright § 17:49 (rev. 2016) ............................... 5

MEMORANDUM OF LAW IN SUPPORT OF MTD
DWT 29963578v1 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I.    SUMMARY OF ARGUMENT

In a stark example of how federal copyright law can be grossly abused, Plaintiff Patricia Ward Kelly – the third wife of legendary performer Gene Kelly – has filed a lawsuit to block the publication of a book about the dancing icon, which DePaul University instructor Kelli Marshall is in the early stages of preparing.

Unlike most copyright lawsuits, this case does not involve a published "work" that is alleged to be infringing; Plaintiff does not even purport to know what a completed manuscript will contain.  Instead, the lawsuit is based on the attenuated theory that Plaintiff – as the alleged heir to Gene Kelly's intellectual property rights[5] – "owns" every word of every interview he gave during his lifetime, including interviews that were published decades ago by third parties who own the copyrights in magazine articles, television programs, and films in which Mr. Kelly was quoted.[6]

Plaintiff does not – and cannot – claim that Mr. Kelly ever registered copyrights in all of his "words," or that he ever asserted copyrights in all of the interviews he gave during his lifetime.  Cf. Cmplt. 17, Ex. A.  Nor did Plaintiff make any effort to register these "works" after Mr. Kelly's death in 1996.  Instead, when Dr. Marshall had the temerity to contact Plaintiff about the book project, Plaintiff responded by immediately attempting to register copyrights in Gene Kelly's "words" from thirty-three different interviews published between 1944 and 1994 ("the Interviews").  Plaintiff then filed a preemptive federal copyright lawsuit against Dr. Marshall and her intended publisher –the University Press of Mississippi – seeking immediate injunctive relief, damages, and an order requiring the Defendants

---

[5] Plaintiff's rights are alleged only in general terms; the Complaint does not allege any specific facts concerning the underlying rights that she purportedly inherited, nor were any testamentary instruments referenced in or attached to it.

[6] Plaintiff has not included any of these publishers as parties to the lawsuit, despite their obvious interest in the rights she claims to "own" in their publications. Her failure to join necessary parties justifies dismissal. See Section V(D), infra.

MEMORANDUM OF LAW IN SUPPORT OF MTD
DWT 29963578v1 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to destroy any copies or "portions" of the Interviews in their possession.[7]

The implications of Plaintiff's far-reaching claim of monopoly rights – and her concurrent attempt to stifle an academic work before it has even been written – are staggering.  If Plaintiff's theory were adopted, celebrities, public officials, and candidates for public office could effectively expunge embarrassing comments from public view by asserting their "copyrights" as a means of preventing their words from being published.  Historians and academics could be prevented from even writing a book, if it quotes someone without their (or their heirs') permission.

Neither the United States Constitution nor federal copyright law permit such an absurd result.  As the Ninth Circuit recently held, even in the context of a copyright lawsuit, court orders that "actually forbid speech activities" are "classic examples of prior restraints."  Garcia v. Google, Inc. 786 F.3d 733, 747 (9th Cir. 2015).  Where, as here, Defendants have not even produced, let alone distributed, any "infringing work," the strong First Amendment interests in protecting speech easily outweigh any speculative copyright interests asserted by Plaintiff.

Plaintiff's rush to file a preemptive lawsuit to block Dr. Marshall's scholarly work also justifies dismissal for another reason:  because nothing has been published, Plaintiff's copyright claim is not ripe.  Her speculation about what a Future Book might – or might not – include does not provide the Court with a "ripe" controversy to adjudicate.  This independently justifies dismissal.  See Section II, infra.

But even if the Court were to consider the merits of Plaintiff's copyright claim, dismissal is justified.  First, Plaintiff has not met her burden of pleading ownership of a valid copyright.  Federal copyright law does not protect oral utterances, and it gives

---

[7] The aggressive litigation tactics did not end there; Plaintiff's counsel sought an "emergency" TRO and expedited discovery, even though there is no published book – or even a manuscript – that could conceivably justify such emergency relief. ECF No. 14.  These scorched-earth efforts were unsuccessful, but Plaintiff has filed an injunction motion, which is set for hearing on August 1.  ECF No. 20.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

copyright protection to the individual or entity that "fixes" expression in a tangible medium.  Gene Kelly's oral interview responses are not subject to copyright protection, and the publishers who "fixed" the Interviews into tangible mediums – not Mr. Kelly – are the proper copyright owners.  <u>See</u> Section IV(A)(2), <u>infra</u>.

Furthermore, Plaintiff has not pleaded (and cannot plead) that Mr. Kelly's "words" consisted solely – or even largely – of protectable expression, rather than unprotected "facts" and ideas.  Section IV(A)(3), <u>infra</u>.  She also has not pleaded facts sufficient to establish a valid copyright in seven of the Interviews, which were published prior to 1978, when certain formalities and renewals were required.  Section IV(A)(4), <u>infra</u>.  Because Plaintiff failed to meet her burden of establishing a valid copyright interest in the Interviews, her lawsuit should be dismissed.

Alternatively, even if Gene Kelly is deemed to have had some copyright interest in his responses to interview questions, it would be – at most – as a co-author of a joint work.  The publishers of the Interviews also would be "joint" copyright owners, who could not be precluded from giving permission to Dr. Marshall to reprint the Interviews.  And even Plaintiff does not dispute that the publishers had an implied license to publish the Interviews, which is not exceeded by a reprinting of the Interviews in the same form as they originally were published.

Finally, because Plaintiff plainly is asserting rights that would negatively impact third parties' rights in the Interviews, the publishers are necessary and indispensable parties to this lawsuit.  Because Plaintiff failed to name them, as required by F.R.C.P. 19, her lawsuit must be dismissed.  <u>See</u> Section V(D).[8]

## II.   PLAINTIFF'S PREEMPTIVE COPYRIGHT SUIT IS PREMATURE.

To establish copyright infringement, a plaintiff must show "(1) ownership of a

---

[8] Plaintiff clearly thought that she could gain a tactical advantage by filing a lawsuit against a college instructor who lives in another state, and might not have the resources to secure California counsel (unlike the publishers, which include The New York Times, among others).  Cmplt., Ex. A at  66.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  Here, Plaintiff has not alleged that Dr. Marshall copied Plaintiff's protected expression, nor could she, when no "book" has been published, or even completed.  As the Ninth Circuit has held, a "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009).  "The ripeness inquiry asks whether there yet is any need for the court to act." Western Oil & Gas Ass'n v. Sonoma Cty., 905 F.2d 1287, 1290 (9th Cir. 1990) (quotation marks omitted).  This is not a mere technicality:  "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." South Pacific Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990) (emphasis added).

Plaintiff's Complaint does not – and cannot – allege that an infringing work has been published or distributed.  Instead, the Complaint alleges that Plaintiff received email correspondence from Dr. Marshall which described Defendants' proposed Future Book.  Cmplt. ¶ 18.  Plaintiff further alleges only that Dr. Marshall "intends to use various Gene Kelly interviews," Cmplt. ¶ 20 (emphasis added); that the Future Book was described as "forthcoming," Cmplt. ¶ 17, and that the Future Book's publisher told Plaintiff that it was "going ahead with the book upon obtaining permission from unidentified third parties and would use the Interviews in the Infringing Book, except for" certain interviews, Cmplt. ¶ 27 (emphasis added).

Notably absent from the Complaint is any allegation identifying a use of specific "works" for which Plaintiff claims copyright interests, or allegations describing how the "work" is going to be used in the Future Book.  Instead, Plaintiff filed a lawsuit based on an inchoate scholarly work, alleging that she "owns" all of Gene Kelly interviews – none of which have registered copyrights, and only 33 of which are even the subject of her newly-filed copyright applications.  This does not suffice to state a claim for copyright infringement.  PocketMedicine.com, Inc. v. John

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Wiley & Sons, Inc., No. 04-cv-8369, 2006 WL 785283, at *3 (S.D.N.Y. Mar. 23, 2006) (no case or controversy where complaint alleged only that the plaintiff wished to copy "some" of defendant's material but did not provide specifics).

In an analogous case, the district court in Silverman v. CBS Inc., 632 F. Supp. 1344 (S.D.N.Y. 1986), concluded that a copyright claim based on a potential future infringement was not ripe. There, CBS claimed that its copyright in the "Amos 'n Andy" television show was going to be infringed by the production of a Broadway musical based on the show. Id. at 1353. The writer had written a script and sought financial backing, but production of the play had not begun. Id. at 1357. The court dismissed the claim for copyright infringement as "unripe," noting that "[u]ntil the [writer] presents his characters on stage, we cannot tell how closely they duplicate the appearance of the television characters." Id. at 1355.

Similarly, without any allegedly infringing work to review – or even specific allegations about the contents of such a work – this Court cannot evaluate Plaintiff's copyright claim, nor can Plaintiff show any "concrete" or "particularized" injury. Because "the court cannot fashion a remedy that will alleviate Plaintiffs' harm," the lawsuit must be dismissed. Addington v. U.S. Airline Pilots Ass'n, 606 F.3d 1174, 1180 (9th Cir. 2010) (claims in union dispute that rested on unratified proposals were not ripe because there were "contingencies that could prevent effectuation of [the contested] proposal" with "too much uncertainty").[9] Because this Court lacks subject matter jurisdiction to adjudicate this dispute, Plaintiff's lawsuit should be dismissed.

## III.   PLAINTIFF'S BROAD COPYRIGHT CLAIM IS INCONSISTENT WITH FIRST AMENDMENT RIGHTS OF EXPRESSION.

In addition to the procedural defect caused by Plaintiff's premature copyright lawsuit, this abuse of federal copyright law – which seeks to squelch the publication

---

[9] Effectively, Plaintiff's action for copyright infringement seeks an improper advisory opinion. See William Patry, Patry on Copyright § 17:49 (rev. 2016).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of a scholarly work before it has even been written – violates the First Amendment. For this independent reason, her Complaint should be dismissed.

At its core, Plaintiff's lawsuit is intended to prevent Dr. Marshall from proceeding with <u>any</u> book that includes words "spoken" by Gene Kelly.  Cmplt. ¶ 10.[10]  This heavy-handed attempt to restrain speech is a "classic prior restraint." <u>Garcia</u>, 786 F.3d at 747.  Although federal copyright law recognizes injunctive relief as a potential remedy for proven infringements, the United States Supreme Court and Ninth Circuit have made clear that "copyright is not 'categorically immune from challenges under the First Amendment.'"  <u>Id.</u> (citing <u>Eldred v. Ashcroft</u>, 537 U.S. 186, 221).[11]  Indeed, the purpose of copyright law is "to foster rather than suppress free expression." <u>Garcia</u>, F.3d at 737.  That underlying purpose is not furthered – and, to the contrary, is dramatically impaired – when an alleged "heir" to questionable copyright interests attempts to use copyright as a means of squelching nascent speech.  As the United States Supreme Court has explained:

> The monopoly privileges that Congress may authorize are neither unlimited nor primarily designed to provide a special private benefit.  Rather, the limited grant is a means by which an important public purpose may be achieved.  It is intended to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired.

<u>Sony Corp. of Am. v. Universal City Studios, Inc.</u>, 464 U.S. 417, 429 (1984).

---

[10] Although the Complaint includes a damage claim, it is necessarily prospective, given that there has not been any publication or distribution of an allegedly infringing work.  Cmplt. ¶ 17.

[11] <u>See also</u> Mark A. Lemley & Eugene Volokh, "Freedom of Speech and Injunctions in Intellectual Property Cases," 48 Duke L.J. 147, 169 (1998) ("injunctions against distributing a supposedly infringing work are injunctions restraining speech; and preliminary injunctions restraining speech are generally considered unconstitutional 'prior restraints.'").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

The Supreme Court has harmonized copyright enforcement with constitutional free speech protections by focusing on this underlying purpose: by incentivizing creative activity, copyright law complements the First Amendment by serving as "an engine of free expression." Golan v. Holder, 132 S. Ct. 873, 890 (2012) (quotation marks omitted).[12] But using the severe remedy of an injunction to restrain speech – particularly where the content of the speech in question is unknown – upsets this delicate balance of competing constitutional interests, and can easily result in the "abuse of the copyright owner's monopoly as an instrument to suppress facts." Harper & Row, Publrs. v. Nation Enters., 471 U.S. 539, 559 (1985).

This is not a speculative concern. It is hardly a new tactic for copyright law to be used as a means of restraining speech.[13] Nor is Plaintiff's lawsuit different from other cases where the copyright law was misused. The Interviews at issue here were published over a fifty-year period, apparently without any claim of copyright ownership (let alone copyright infringement) by Gene Kelly. During the 20+ years since his death, Plaintiff did not seek to register copyrights in the Interviews, or

---

[12] The fair use doctrine also seeks to harmonize copyright and free speech interests. Plaintiff does not attempt to address "fair use," nor could she, given that there is no "publication" to be evaluated. But even publishing an entire interview may be deemed to be a protected "fair use." See, e.g., Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., 756 F.3d 73, 88 (2d Cir. 2014).

[13] Howard Hughes sought to silence a critical biographer (Rosemont Enterp. v. Random House, Inc., 366 F.2d 303 (2d Cir. 1966)); Diebold Election Systems tried to hide security flaws in voting machines (Online Policy Group v. Diebold, Inc., 337 F. Supp. 2d 1195 (N.D. Cal. 2004)); the Church of Scientology attempted to suppress an affidavit describing its teachings (Religious Techn. Ctr. v. Lerma, 908 F. Supp. 1362, 1366-68 (E.D.Va. 1995)); and Navy SEALS sought to keep photos private that depicted abuse of military prisoners (Four Navy Seals & Jane Doe v. AP, 413 F. Supp. 2d 1136, 1142 (S.D. Cal. 2005)), all by asserting claims for copyright infringement. See also John Tehranian, Curbing Copyblight, 14 Vand. J. Ent. & Tech. L. 993, 999, 1005 (2012) ("[t]he adverse consequences of overreaching copyright claims are widespread, stymieing expressive rights and squelching legitimate social, political, and economic discourse in myriad ways").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

publish them to a wider audience.  It was only when <u>another</u> author explored the possibility of creating a scholarly work about Gene Kelly that Plaintiff and her lawyer sprang into action, with the assertion that she owns <u>every word</u> Gene Kelly ever spoke in an interview, and an aggressive lawsuit against an out-of-state college instructor and University publisher.  On its face, this lawsuit plainly is not about protecting legitimate copyright interests; it is entirely about restraining speech.[14]

Moreover, if Plaintiff's expansive theory were adopted, copyright law could be used by the subjects of news coverage to exercise veto power over unflattering broadcasts or publications.  Public officials could argue, like Plaintiff argues here, that they "own" the copyright in their extemporaneous responses to a videotaped interview.  It is not difficult to imagine a former Vice Presidential candidate seeking to restrain the distribution of a disastrous interview with a television network, or to imagine an entertainer trying to prohibit media coverage of his inappropriate comments.  News outlets routinely conduct interviews with bystanders at public events, public officials commenting on important public events, and candidates for public office seeking support from voters.  Under Plaintiff's theory, all of these "interviewees" would own the copyright in their oral remarks and interview responses, which they could invoke as a means of censoring news coverage.  Well-developed First Amendment jurisprudence forbids this kind of prior restraint on speech.  <u>Nebraska Press Ass'n v. Stuart</u>, 427 U.S. 539, 557 (1976) (the "main purpose" of the First Amendment is "to prevent all such previous restraints upon publications as [have] been practiced by other governments.") (quoting <u>Patterson v. Colorado ex rel. Attorney General</u>, 205 U.S. 454, 462 (1907)).  Such prior restraints

---

[14] <u>See also</u> <u>Bollea v. Gawker Media, LLC</u>, 913 F. Supp. 2d 1325 (M. D. Fla. 2012) (court denied celebrity's motion for injunction to force a news website to remove a "sex tape" video on copyright grounds, noting there was "no evidence that Plaintiff ever intends to release the Video and, in fact, it is quite likely that Plaintiff seeks to recover the copyrighted material for the sole purpose of destroying – not publishing – the copyrighted material.")

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

are "presumptively unconstitutional," id., and "may be considered only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures." CBS, Inc. v. Davis, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers).[15]

This Court should reject Plaintiff's effort to grossly expand the notion of "copyright" – which would give interviewees, whether they are celebrities, sports icons, or Presidential candidates, virtually monopolistic control over every publication of their utterances. Because her theory for relief and preemptive lawsuit are inconsistent with the constitutional balance between copyright law and the First Amendment, her lawsuit should be dismissed.

## IV.  PLAINTIFF DOES NOT OWN A COPYRIGHT INTEREST IN GENE KELLY'S RESPONSES TO INTERVIEW QUESTIONS.

It is well-established that the plaintiff in a copyright lawsuit "bears the burden of proving copyright ownership" in any supposed works of authorship. Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 654 F.3d 958, 962 (9th Cir. 2011).[16]  Here, Plaintiff's copyright claim rests on the theory that Gene Kelly owned the exclusive

---

[15] These are not the only defects and constitutional issues raised by Plaintiff's attempt to obtain injunctive relief.  Dr. Marshall's Opposition to Plaintiff's motion for a preliminary injunction will address other issues, including Plaintiff's inability to demonstrate alleged harm that is concrete, and not speculative.  E.g., Davis, 510 U.S. at 1318 ("speculative predictions … cannot justify a prior restraint).  See also eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2007) (setting out factors necessary to justify injunctive relief in copyright case).

[16] Plaintiff has not obtained registration certificates or a valid registration within five years of any of the Interviews' first publication dates, meaning, as a matter of law, she is not entitled to any presumption of ownership of valid copyrights.  See 17 USC § 410(c) ("[i]n any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.")  All of the registration certificates here are outside the five-year period – indeed, the most recent interview identified was in 1994, and the applications were filed more than twenty years later, in 2016.  Cmplt. ¶ 17, Ex. A.

copyright interest in every word he uttered to reporters and other interlocutors in thirty-three interviews published over the course of six decades.  As a matter of law, this claim fails.  Oral responses to interview questions are not protected by copyright, and the copyright to a published work is "fixed" by the publisher, not the interviewee.  Moreover, Plaintiff cannot plead facts sufficient to establish that the interview responses consisted of protectable expression – or that she owns any valid copyright in pre-1978 works.  Because Plaintiff has failed to state a claim as a matter of law, her lawsuit should be dismissed in its entirety.

## A.   Plaintiff Has Not Met Her Burden Of Pleading Copyright Ownership.

"The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas or the facts he narrates.'"  Feist, 499 U.S. at 344-45 (quoting Harper & Row, 471 U.S. at 556).  To the contrary, copyright protection exists only in "original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).  Because Gene Kelly did not own a copyright in his responses to interview questions, no rights passed to Plaintiff upon Mr. Kelly's death.

Courts faced with attempts to control the dissemination of public comments or interview responses have rejected the use of copyright law for this purpose.  For example, in Taggart v. WMAQ Channel 5 Chicago, No. 00-cv-4205, 2000 WL 1923322 (S.D. Ill. Oct. 30, 2000), a prisoner who had submitted to a television interview tried to use copyright law to force the station to destroy the interview tapes. Id. at *3.  The district court rejected the claim, finding that the interviewee had no copyrightable interest in his responses.  Id.  The court's rationale for denying the plaintiff's "singular and unjustified" attempt to claim exclusive copyright rights are similarly applicable here:  (1) there is no copyright in spoken words; (2) an interviewee is not the "author" of the "fixed" work that is copyrightable law; and (3) responses to interview questions that consist of "facts" are not copyrightable.  Id.

### 1.   Gene Kelly's Oral Interview Responses Were Unprotectable.

As the district court recognized in Taggart, an interviewee does not own the

10

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

copyright in his responses as they are uttered, because there is no statutory copyright protection for the "spoken word." Id. For this reason alone, celebrities and public figures are precluded from claiming that "every utterance" they make constitutes a "valuable property right." Falwell v. Penthouse Int'l, Ltd., 521 F. Supp. 1204, 1207 (W.D. Va. 1981). In Falwell, the court rejected Reverend Jerry Falwell's attempt to prevent an interview from being published in Penthouse magazine by asserting an exclusive copyright interest in his responses. Id. The court noted that a contrary rule would lead to courts being "inundated with claims from celebrities and public figures, all of whom may argue that their expressions should also be afforded the extraordinary protection of copyright." Id.

Similarly, Ernest Hemingway's estate was rebuffed in its attempt to claim a common-law copyright in Hemingway's conversations with a friend who subsequently published a biography about him. Estate of Hemingway v. Random House, Inc., 23 N.Y.2d 341, 354 (1968); see also Harris v. Miller, 1941 U.S. Dist. LEXIS 3949 (S.D.N.Y. 1941) at *5 (if a biographer of Oscar Wilde was able to reconstruct conversations he had with Wilde, the resulting book "would be authorship [by the biographer]" and the copyright interest would vest with the biographer, not the interviewee). The same result should apply here.

Plaintiff's claim is based on the premise that "[t]he spoken and written[17] words by Gene Kelly during all of his interviews … are original works of authorship and are copyrightable subject matter under the laws of the United States." Cmplt. ¶ 9. But this ignores the limitations of copyright protection. As the Falwell court noted, "courts have never recognized a proprietary interest where there was no tangible embodiment of the expression of an idea." 521 F. Supp. at 1207; 17 U.S.C. § 102(a).

Indeed, an interview of a celebrity or public figure is akin to a "live event," which is not itself a copyrightable "work." As courts have found in analyzing

---

[17] The Complaint does not identify any such "written" words in the Interviews.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

sporting events, the games themselves are not subject to copyright protection, although their recorded broadcasts are copyrightable. See National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 846 (2d Cir. 1997). But the broadcaster owns the copyright – individual athletes whose performances are "fixed" in the broadcast do not. Id. See also Prod. Contractors, Inc. v. WGN Cont'l Broad. Co., 622 F. Supp. 1500, 1503 (N.D. Ill. 1985) (parade is not copyrightable, although "its telecast might be" if it is fixed in a tangible medium of expression"). The same rule applies to interviews: the interviewee may "perform," providing verbal responses to questions, but no copyright protection attaches to that oral performance. It is only when the interview is published that it becomes "fixed" in a tangible medium – and as discussed below, the publisher owns that copyright.[18]

## 2.    Gene Kelly Was Not The "Author" Of The Interviews.

The Copyright Act provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). Although the term "author" is undefined in the statute, "[a]s a general rule, the author is the party who actually

---

[18] Some courts have found, at least in dicta, that interviewees' responses to interview questions may be separately copyrightable. Suid v. Newsweek Magazine, 503 F. Supp. 146, 148 (D.D.C. 1980) (author of factual work could not claim copyright in statements made by others); Maxtone-Graham v. Burtchaell, 631 F. Supp. 1432, 1434 (S.D.N.Y. 1986) (author of a book of interviews could not sue for copyright infringement without showing transfers of copyright interests from her interviewees). But unlike this case, those cases did not involve an interviewee claiming an exclusive copyright interest to preclude the interviewer from publishing responses. In fact, the interviewees were not parties to those suits; instead, interviewers were attempting to block third parties from using information from the interviewee's responses. In each case, the court found that the copyright law could not be used as a mechanism for stifling another's speech. E.g., Suid 503 F. Supp. at 148 (book's author could not block republication of factual information in interview responses); Maxtone-Graham, 803 F.2d at 1265 (author of anti-abortion book was permitted to republish interview responses contained in plaintiff's earlier pro-choice book). Furthermore, in Swatch, the court found that republication of an entire question-and-answer session in which the plaintiff claimed copyright was a "fair use." 756 F.3d at 88. These results are consistent with Dr. Marshall's position here.

---

MEMORANDUM OF LAW IN SUPPORT OF MTD
DWT 29963578v1 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." Community For Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989).  Put another way, an author is the person "to whom the work owes its origin and who superintended the whole work, the 'master mind.'" Aalmuhammed v. Lee, 202 F.3d 1227, 1233 (9th Cir. 2000) (quoting Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 61 (1884)).

As the court in Taggart found, the interviewer records and edits an interview; thus, to the extent anyone can claim copyright ownership in an interview, it most likely is the individual who "fixed the ideas into a tangible expression."  2000 WL 1923322, at *4.  See also Pacific & Southern Co. v. Duncan, 792 F.2d 1013, 1014 n.1 (11th Cir. 1986) ("interviews with or speeches by public officials are … more likely to qualify as the work of the [interviewer's staff] – who make audio, filming and editing choices in the presentation of this material – than the work of the government"); Fallaci v. New Gazette Literary Corp., 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) (judgment entered for reporter whose interview with international politician was translated into Russian and republished there without authorization); Aalmuhammed, 202 F.3d at 1232 (author is the person with "creative control").

Applying similar principles, the en banc Ninth Circuit recently held that an actor had no protectable copyright interest in her performance in a film because she was not the one who "fixed her acting performance in a tangible medium." Garcia v. Google, Inc., 786 F.3d 733, 743 (9th Cir. 2015) (en banc).  Instead, the director "and his crew 'fixed' [the actress's] performance in the tangible medium, whether in physical film or in digital form." Id.  The Garcia court distinguished the actress' performance itself – which was "intended to be an inseparable part of an integrated film" and so was not a "work" in which the performer could obtain an independent copyright – with "standalone works that are separately fixed and incorporated into a film," which could be independently copyrighted. Id. at 744 n.13.

Plaintiff's Complaint does not (and cannot) allege that Gene Kelly published

the Interviews for which he provided oral responses, or otherwise "fixed" his responses into a tangible medium; nor does it allege that he was the "superintendent" or the "master mind" of any fixed work.   Instead, Plaintiff acknowledges that the Interviews at issue are "interviews [with] news and media publications" that Mr. Kelly gave over the course of his career. Cmplt. ¶ 9.  Thus, Gene Kelly's interviews are like an actor's performance:  he responded to questions while the camera rolled, the tape recorder recorded, or the interviewer scribbled notes.  The conversation or performance that included his responses to interview questions was not a "standalone work" that was "separately fixed" by Gene Kelly or under his authority.  Instead, the interview responses plainly were "intended to be an inseparable part of the integrated" published interview, and neither Gene Kelly nor his heirs have a separable copyright interest in them.  See 786 F.3d at 743.

In addition to ignoring the role of the publisher, who actually "fixed" the interview into a tangible medium, Plaintiff ignores the fact that the interviewer is responsible for the direction and content of the interview.  For example, in Quinto v. Legal Times of Washington, Inc., 506 F. Supp. 554 (D.D.C. 1981), the district court allowed the author of a newspaper article containing interview responses to sue for infringement when the article was republished without authorization, because the author's "selection, arrangement, and ordering of" quotations was copyrightable expression. Id. at 559.  Similarly, in Urantia Found. V. Maaherra, 114 F.3d 955, 959 (9th Cir. 1997), the Ninth Circuit held that the authors of a religious text that purported to contain answers from celestial beings that were prompted by questions from humans, held the copyright in the text because they "purported to contribute to the structure of the Papers, to the arrangement of the revelations in each Paper, and to the organization and order in which the Papers followed one another."  The same reasoning applies to interviewers who shape question-and-answer sessions between

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

human beings.[19]  Similarly, Gene Kelly had no copyright interest in his spontaneous responses to questions that were fixed, edited, arranged, and published by a third party media organization or other interviewer.[20]

### 3.   The Interviews Consist Of Uncopyrightable Facts And Ideas.

Even for expression that is "fixed" in a tangible medium, copyright protection is limited.  For example, as the Ninth Circuit has held, "historical facts are not protected by copyright."  Novak v. Warner Bros Pictures, LLC, 387 F. App'x 747, 748 (9th Cir. 2010).  See also Narell v. Freeman, 872 F.2d 907, 910 (9th Cir. 1989) ("[f]acts and ideas within a work are not protected.").

The district court in Taggart applied these well-established principles in articulating another basis for rejecting a prison inmate's claim to copyright protection in his interview responses:  "[U]tterances made during an interview are not an

---

[19] If the interviewee controls and "fixes" the interview, this analysis also may apply.  For example, in Swatch, the Second Circuit assumed, without deciding, that Swatch had a copyright interest in the recording of a conference call with its own executives that the company produced and recorded.  756 F.3d at 89.  Notably, the copyright protection afforded to such factual material was very thin; the Court held that a news organization's reproduction and dissemination of the entire conference call was protected as a "fair use," because it "served the important public purpose of disseminating important financial information, without harm to the copyright interests of the author."  756 F.3d at 92.  Similarly here, even the publication of an entire interview with Gene Kelly in a scholarly work about his life would serve important public purposes, without harming a legitimate copyright interest.

[20] The Copyright Office's updated Compendium of Practices allows interviewees to register for copyrights in their responses, at least in some circumstances.  See U.S. Copyright Office, Compendium III § 719 (effective 2014).  But even if Plaintiff could obtain valid registrations – which remains an open question – the Copyright Office's practice manual is not binding authority.  Instead, it is an "internal agency manual[] or opinion" that should be considered "only to the extent that [it has] the power to persuade."  Inhale, Inc. v. Starbuzz Tobacco, Inc., 755 F.3d 1038, 1042 (9th Cir. 2014); see also Morris v. Bus. Concepts, Inc., 283 F.3d 502, 505 (2d Cir. 2002) ("the Copyright Office has no authority to give opinions or define legal terms.").  The Copyright Office manual does not explain its position, and appears never to have been cited by a court.

---

MEMORANDUM OF LAW IN SUPPORT OF MTD
DWT 29963578v1 0050033-000508

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

expression of an idea for the purpose of copyright law, they are simply an idea, and thus not subject to copyright protection." 2000 WL 1923322, at *4. As the court explained, affording interviewees the "formidable protection of copyright law" in their spontaneous responses to questions that were "gathered in the daily task of the news reporter would essentially bring the industry to a halt." Id.

Some courts have applied this limitation on what is "copyrightable" even more expansively, finding that extended quotations from interviews that appeared in a third party's work may not have any copyright protection. As one court explained, an interviewer cannot "claim to have created these statements any more than an historian or biographer can claim to have created the facts and statements reported in a work about an historic personage." Rokeach v. Avco Embassy Pictures Corp., No. 75-cv-49, 1978 WL 23519, at *7 (S.D.N.Y. Jan. 17, 1978) (noting that responses of patients reported in a book-length report of a psychology study were likely not copyrightable by the study's author). See also Quinto, 506 F. Supp. at 559.

Thus, even under these cases, the outcome in this case is the same: Plaintiff has no protectable copyright interest in Gene Kelly's interview responses. At minimum, Plaintiff must plead sufficient facts to establish that the content of the Interviews in which she claims exclusive copyright interests is "expression," and not "facts" or "ideas." She has not and cannot do so.[21]

### 4. Plaintiff Has Not Alleged A Valid Copyright In Pre-1978 Works.

"Even at the pleading stage, a plaintiff bears the burden of alleging adequate facts to support a claim of equitable ownership of copyrights." Jim Marshall Photography, LLC v. John Varvatos of California, No. 11-cv-6702, 2013 WL 3339048, at *8 (N.D. Cal. June 28, 2013); see also Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 654 F.3d 958, 962 (9th Cir. 2011) (same).

---

[21] See concurrently-filed Request For Judicial Notice and Exs. 1-3. As evidenced by those examples of the Interviews at issue here, substantial portions of Gene Kelly's responses are "facts" or "ideas," rather than protected expression.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Specific allegations of ownership are especially important for works published before 1978, which are governed by the Copyright Act of 1909, because that Act contained many formalities that had to be followed for a work to secure copyright protection.  "Numerous courts have dismissed complaints arising under the 1909 Act where plaintiffs have failed to adequately plead facts supporting that conclusion [of ownership] with particularity."  Jim Marshall Photography, LLC, 2013 WL 3339048, at *8.  Conclusory legal assertions of copyright ownership are insufficient to survive a motion to dismiss; instead, a complaint must contain "well-pled factual allegations from which it is plausible to conclude that Plaintiff himself [or herself] owns a valid copyright."  Choyce v. SF Bay Area Indep. Media Ctr., No. 13-cv-01842, 2014 WL 5597274, at *2 (N.D. Cal. Nov. 3, 2014)  (denying leave to amend where plaintiff could not plausibly allege ownership of a valid copyright).

Here, Plaintiff has not plausibly alleged ownership of the seven Interviews identified in Exhibit A to the Complaint that were published before 1978.  Among other defects, she has not alleged that these works were published with a copyright notice showing **Gene Kelly** as the work's author.  But for works published before January 1, 1978, "copyright law recognized a freelance author's copyright in a published article only when the article was printed with a copyright notice in the author's name."  New York Times Co. v. Tasini, 533 U.S. 483, 494 (2001) (emphasis added).  As the Supreme Court explained, "when a copyright notice appeared only in the publisher's name, the author's work would fall into the public domain," absent narrow exceptions not applicable here.  Id.; see also Twin Books Corp. v. Walt Disney Co., 83 F.3d 1162, 1165-66 (9th Cir. 1996) ("[t]he general rule under the 1909 Act is that a work must bear a valid copyright notice upon publication […] to secure copyright protection in the United States.  … [A] publication of a work in the United States without the statutory notice of copyright fell into the public domain, precluding forever any subsequent copyright protection of the published work.").

The Complaint does not allege – nor could it plausibly allege – that any of the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Interviews were published with a notice alleging that Gene Kelly was the author.  For this reason alone, Plaintiff's claims purporting to arise from those works fails.  Brown v. Latin Am. Music Co., 498 F.3d 18, 20, 24 (1st Cir. 2007) (counterclaim for copyright infringement was barred despite certificate of registration issued in 2000, where there was judicially noticeable evidence that works were first published in early 1950s without the requisite copyright notices).

In addition, Plaintiff failed to plead facts establishing that the copyrights for the three Interviews published before January 1, 1964, were properly renewed.  If that did not happen, the Interviews are in the public domain.[22]  Because there is no allegation that Plaintiff filed for renewals – or even any allegation that the copyrights ever were registered by Gene Kelly in the first place – she has not met her burden of establishing a valid copyright interest in the pre-1964 Interviews.

Once in the public domain, Plaintiff cannot resurrect a purported copyright interest – if one ever existed – by refiling copyright applications.  Twin Books Corp., 83 F.3d at 1165-66; see also Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 34 (2003) (public has right "to copy and to use expired copyrights").  Thus, Plaintiff's rush to file copyright applications in **April 2016** for works published decades earlier does not change the result, or cure the defect in the copyright formalities.[23]  Because she has failed to establish a valid copyright in older Interviews identified in Exhibit A, those claims should be dismissed.

---

[22] The Copyright Act of 1909 had a twenty-eight year original term, subject to a "clear statutory requirement for copyright renewal" if the term was to be extended.  Urantia Found., 114 F.3d at 961 (citing 17 U.S.C. § 304(a) (1983)).  Congress later abolished the renewal requirement, but applied the new requirements "only to works whose original statutory copyright was obtained after December 31, 1963."  Id. at 961 n.2 (citing Copyright Renewal Act of 1992).

[23] Even if Plaintiff's applications are approved, that does not provide prima facie evidence of actual copyright ownership.  See note 16, supra; see also Brown, 498 F.3d at 24 (registration certificate issued more than five years after first publication "would receive little or no weight").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## V.   PLAINTIFF CANNOT ESTABLISH OWNERSHIP OF AN EXCLUSIVE COPYRIGHT INTEREST IN THE INTERVIEWS.

For the reasons discussed above, this Court should find that Gene Kelly did not have any copyright interest in the interview responses he gave over the course of his career.  But even if this Court found that Gene Kelly or his purported heirs had some protectable intellectual property interest in any of the Interviews, the law does not support a finding that his right was <u>exclusive</u>.  Consequently, Plaintiff cannot unilaterally prohibit Dr. Marshall's use of the Interviews.

### A.   Joint Authors Cannot Unilaterally Prohibit Licensing Of Joint Works.

A joint work is a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  In view of the collaborative structure of interviews, some commentators have suggested that interviews should be considered "joint" works of authorship.  <u>See</u> Paul Goldstein, <u>Goldstein on Copyright</u> § 4.2.1.3 (3d Ed. 2016) (suggesting that interviews should be considered joint works in part because "the questions and answers in an interview are contemporaneous").  As one court explained, "[c]conversation cannot be catalogued as merely the cumulative product of separate and unrelated individual efforts, but, on the contrary, it is rather a synthesized whole that is indivisibly welded by the interaction of the parties involved."  <u>Estate of Hemingway v. Random House</u>, 49 Misc. 2d 726, 730 (N.Y. Sup. Ct. 1966).  Here, to the extent that Gene Kelly can be deemed to be an "author" of anything at all, at most he would be a co-author, along with each respective interviewer or publisher.  <u>See Foundation for Lost Boys And Girls of Sudan, Inc. v. Alcon Entm't</u>, No. 15-cv-509 (N.D. Ga. March 22, 2016), ECF No. 32 at 21 (taped interviews between refugees and movie producers were joint works because interviews "necessarily merged the respective contributions" of interviewers and interviewees "into inseparable parts of a whole").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In <u>Aalmuhammed</u>, the court identified three factors to be considered in determining joint authorship. First, the court should consider whether a co-author "superintends the work by exercising control." 202 F.3d at 1234 (quotation marks omitted). An interviewer has control over the questions asked in an interview; the interviewee's answers are dictated by the particular questions asked.[24]

Second, the court should consider whether there are "objective manifestations of a shared intent to be coauthors." 202 F.3d at 1234. Here, there are no facts alleged suggesting that the interviewers ever intended to give sole copyright ownership to Mr. Kelly; publishers typically control their own publications. But at minimum, by controlling their own works, the publishers manifested an intent to shae or have sole copyright ownership. <u>See Brod v. General Publ'g Group, Inc.</u>, 32 F. App'x 231 (9th Cir. 2002) (evidence of actual collaboration is more important to demonstrate shared intent to be co-authors).

Finally, the court should consider whether "the audience appeal of the work turns on both contributions and the share of each in its success cannot be appraised." <u>Aalmuhammed</u>, 202 F.3d at 1234 (quotation marks omitted). Certainly the appeal of the published interviews was not in isolated answers alone; the questions, commentary, photographs, and other material contributed by the interviewers contributed substantially. Consequently, if Gene Kelly had any rights of "authorship" at all in his Interviews, at most he could be deemed to be a co-author with a joint copyright in his Interviews.

---

[24] Even before an interview begins, the interviewer makes editorial choices about what questions to ask and not ask. Once the interview starts, some interviews end up as verbatim reproductions of conversations, while others do not. Many interviews, before they are printed, require editorial choices by the author, who selects, arranges, and orders the interview questions and answers. These editorial choices support a finding that the <u>interviewer</u> is the author of the published work. <u>Quinto</u>, 506 F. Supp. at 559 (author's "selection, arrangement, and ordering of" quotations was copyrightable expression).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

But as the alleged successor to the copyright interest of a joint author, Plaintiff does not have an exclusive right to use of the Interviews.  See Williams v. ARC Music Corp., 121 F.3d 720, *1 (9th Cir. 1997) (unpublished) ("a joint [copyright] owner may, without obtaining the consent of the other joint owners … grant a nonexclusive license to third parties." (quotation marks omitted)).  See also Oddo v. Ries, 743 F.2d 630, 633 (9th Cir. 1984) ("each co-owner has an independent right to use or license the use of the copyright.").  Thus, the original publishers have an absolute right to grant Dr. Marshall permission to use the Interviews for the Future Book, and Plaintiff has no right to sue for copyright infringement or block the publishers' exercise of their copyright interests.[25]

**B.    The Publishers Of The Interviews Indisputably Have An Implied License To Publish Or Re-Publish Their Works.**

At bare minimum, the publishers of Gene Kelly's Interviews had an implied, non-exclusive license to use his responses in the resulting published interviews, and in any subsequent reprints of those works.  Under the Copyright Act, a "nonexclusive license may be granted orally, or may even be implied from conduct."  Effects Associates, Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990) (quotation marks omitted).  Under analogous circumstances, the Ninth Circuit has made clear that a publisher has an implied license to include an individual's performance in a work. See, e.g., Garcia, 786 F.3d at 743.

Similarly, in Oddo v. Ries, 743 F.2d 630 (9th Cir. 1984), the Ninth Circuit rejected a copyright infringement claim by one member of a partnership that contributed articles to a book about restoring pickup trucks.  Id. at 632.  The court held that "by preparing a manuscript based on his preexisting articles as part of his

_____

[25] Plaintiff has not pleaded, and cannot plead, that Defendants intend to publish the Future Book without the consent of the publishers; to the contrary, as Plaintiff admits in the Complaint, Defendant UPM made clear that no Interviews would be included unless the publishers gave consent.  Cmplt. ¶ 20.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

partnership duties," the author "impliedly gave the partnership a license to use the articles insofar as they were incorporated in the manuscript." Id. at 634. See also Effects Associates, 908 F.2d at 558 (claim by special effects house against movie producer for copyright infringement based on the producer's use of the special effects sequence the producer had commissioned was barred by implied license; because the effects house "created a work at defendant's request and handed it over, intending that defendant copy and distribute it" there was an implied license).

Here, the fact that an interview occurred and was published demonstrates that the interviewer had an implied license to distribute Gene Kelly's responses to the interviewer's questions, along with whatever other editorial material appeared in the interview. Such an implied license would cover republication, including any permission given to Dr. Marshall for the Future Book here. Oddo, 743 F.2d at 634 (implied license gives interviewer a right to publish the responses at least "in the [interview] itself"). Because Plaintiff's copyright claim alleges that Dr. Marshall intends to republish the interviews and responses intact, as originally published, the implied license granted by Gene Kelly for the publication would cover the republication as well. Effects, 908 F.2d at 559.

**C.     Section 201(c) Does Not Give Plaintiff An Exclusive Copyright Interest.**

During the parties' an 7.3 discussion, Plaintiff's counsel asserted that Plaintiff's rights derive from Section 201(c) of the Copyright Act, which concerns the rights of contributors to a collective work. Sager Decl., ¶ 3. Section 201(c) provides that the "[c]opyright in each separate contribution to a collective work is distinct from copyright in the collective work as a whole, and vests initially in the author of the contribution."[26] That provision has no application whatsoever here.

---

[26] It goes on to state that, absent an express agreement, "the owner of copyright in the collective work is presumed to have acquired only the privilege of reproducing and distributing the contribution as part of that particular collective work, any revision of that collective work, and any later collective work in the same series." Id.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

First, as discussed above, Gene Kelly had <u>no</u> copyright interest in his responses to interview questions.  That is not altered by Section 201(c), which addresses situations where multiple copyright owners combine their works into a collection.[27]

Second, an article or a broadcast containing an interview or quoted material is not a "collective work" within the meaning of Section 201(c).  A "collective work" is defined in the Copyright Act as "a work, such as a periodical <u>issue</u>, anthology, or encyclopedia, in which a number of contributions, <u>constituting separate and independent works in themselves</u>, are assembled into a collective whole."  17 U.S.C. § 101 (emphasis added).  Section 201(c) provides a default arrangement between the publishers of collective works and authors who create "separate and independent works in themselves" that are included in those collective works, like one poem in a book of poems by different authors, or one article in a magazine.  <u>New York Times Co. v. Tasini</u>, 533 U.S. 483, 496 (2001).

But Gene Kelly did not create a "separate and independent work."  His "words" were part of the raw materials for the interviewer's creation of an article or broadcast.  Even if an article containing an interview was then combined with other articles for a magazine ("periodical issue"), that does not convert the single article into a "collective work," or enable Plaintiff to parse between <u>parts</u> of a single article.  Notably, the Complaint and Plaintiff's copyright applications never mention Section 201(c), or assert that the interviews were part of a "collective work."  Instead, the registrations purport to identify isolated, disparate words that were included <u>within</u> an article or broadcast, not any "separate and independent work" that can stand as an individual contribution to a magazine or newspaper.  <u>See</u>, <u>e.g.</u>, Cmplt., Ex. A at 39.

---

[27] Even assuming Mr. Kelly had a protectable copyright interest, it would only be as a joint author, requiring him to abide by the licensing arrangements made by <u>other</u> joint authors.  <u>See</u> Section V(A), <u>supra</u>.  Section 201(c) does not alter the rights of joint copyright owners.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Under Plaintiff's attenuated theory, every magazine or newspaper wishing to republish or license an article containing quotations – whether for a book or other compilation, or even for a searchable database – would be required to seek not only the permission of the author, but also <u>everyone quoted in the article</u>.  The Copyright Act has never been interpreted to impose this sort of burden on the dissemination of factual information, nor should this Court engage in such an expansion of its terms.[28]

## D.     Plaintiff's Failure To Join Necessary Parties Requires Dismissal.

If this Court finds that Gene Kelly was a "co-author" of the Interviews, holding a "joint" copyright interest with the original publishers, this lawsuit should be dismissed because Plaintiff failed to join necessary and indispensable parties under F.R.C.P. 19.  <u>See</u>, <u>e.g.</u>, <u>Stafford Trading, Inc. v. Lovely</u>, 2007 WL 1512417, at *12 (N.D. Ill. May 21, 2007) (alleged co-owners of copyrights were necessary parties in a copyright suit because "a declaration [of ownership] would obviously affect [the alleged co-owners'] interest"); <u>see also</u> <u>Gaines v. Fusari</u>, No. 11-cv-4433, 2012 WL 3018293, at *5 (D.N.J. July 24, 2012) (co-songwriter was necessary party in copyright dispute); <u>Key W. Hand Print Fabrics, Inc. v. Serbin, Inc.</u>, 269 F. Supp. 605, 608 (S.D. Fla. 1966) (dismissing copyright claim where copyright "was registered in the joint names of plaintiff and [another party]" who was not "joined as a plaintiff").

Indeed, if Plaintiff is deemed to have any copyright interest in the Interviews under any theory, the original publishers are "necessary" parties to this lawsuit because it necessarily affects the rights owned by the original publishers.  Moreover, any ruling premised on Gene Kelly having <u>sole</u> copyright ownership in the responses contained in dozens of Interviews would seriously impair the interests of the entities that originally published them, by exposing the publishers to wide-ranging copyright damages for their publications.  Because the publishers are necessary and

---

[28] Section 201(c) does not apply to Interviews published before January 1, 1978, the effective date of the Copyright Act of 1976, absent proof that the requisite formalities were satisfied.  <u>See</u> 17 U.S.C. § 301 <u>et</u> <u>seq.</u>; <u>see</u> Section IV(A)(4), <u>supra</u>.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

indispensable parties, Plaintiff should be required to join all of them in this lawsuit before she is permitted to proceed.  PocketMedicine.com, Inc., No. 04-cv-8369, 2006 WL 785283, at *4 (S.D.N.Y. Mar. 23, 2006) ("it is clear that … the proprietor of copyright in the Book, should be joined"); First Financial Mktg. Servs. Group, Inc. v. Field Promotions, Inc., 286 F.Supp. 295, 298 (S.D.N.Y. 1968) ("the copyright owner is an indispensable party to a suit where the validity of the copyright is in issue.").  If she fails to do so, her copyright claim should be dismissed with prejudice.

## VI.    CONCLUSION

As the Ninth Circuit noted in the Garcia case, "a weak copyright claim cannot justify censorship in the guise of authorship."  786 F.3d at 736.  Nor can a weak copyright claim justify the kind of thinly-disguised prior restraint on speech that is sought by Plaintiff here.  Copyright law is intended to "foster rather than suppress free expression[]," id. at 737, and courts should not allow it to be abused by bullies seeking to protect their own self-interest at the expense of the public discourse the law was intended to promote.  For all the reasons set forth above, Plaintiff's lawsuit against Defendant Kelli Marshall should be dismissed, with prejudice,[29] and Dr. Marshall should be awarded the attorneys' fees and costs she has incurred in defending against this baseless lawsuit.  17 U.S.C. § 505.

DATED: June 30, 2016

By:_____/s/ Kelli L. Sager_____
Kelli L. Sager
Attorneys for Defendant
KELLI MARSHALL

---

[29] Because no amendment would cure these defects, Plaintiff's claim should be dismissed with prejudice.  See Wages v. I.R.S., 915 F.2d 1230, 1235 (9th Cir. 1990) (leave to amend should be denied where amendment is futile); Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990) (motions to amend should be denied "if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899